IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VENICIA A. TUCKER, o.b.o. D.T, )<br>     Plaintiff,                              )<br>                                                )<br>v.                                           )<br>                                                )<br>CAROLYN W. COLVIN, Acting     )<br>Commissioner of Social Security, )<br>     Defendant.                          ) | CIVIL ACTION NO. 14-00177-N |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sharon Venicia A. Tucker, on behalf of her minor child D.T., has brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying D.T.'s application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*. By the consent of the parties (Doc. 19), the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 20).

Upon consideration of the parties' briefs (Docs. 15, 16) and the administrative record (Doc. 12) (hereinafter cited as "(R. [page number(s)])"),[1] the Court finds that the Commissioner's decision is due to be **REVERSED and REMANDED**.

### I.   Procedural Background

Tucker filed D.T.'s SSI application at issue on November 7, 2011, alleging a

---

[1] With the Court's consent, the parties jointly waived the opportunity for oral argument. (Docs. 18, 21).

disability onset date of September 18, 2011.[2]  After her application was initially denied, Tucker requested a hearing on her application, which was held in Mobile, Alabama, before an Administrative Law Judge ("ALJ") on June 5, 2013.  (R. 13).

On July 23, 2013, the ALJ issued an unfavorable decision on Tucker's application, finding D.T. "not disabled" under the Social Security Act.  (*See* R. 10-24).  Tucker requested review of the ALJ's decision by the Appeals Council for the SSA's Office of Disability Adjudication and Review (R. 9), which denied Tucker's request on February 18, 2014.  (R. 5 – 7).

On April 18, 2014, Tucker filed this action under § 1383(c)(3) for judicial review of the Commissioner's final decision.  (Doc. 1).   *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council."); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action

---

[2] "SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability."  *Sanders v. Astrue*, Civil Action No. 11-0491-N, 2012 WL 4497733, at *3 (S.D. Ala. Sept. 28, 2012) (citing 42 U.S.C. 1382(a), 1382c(a)(3)(A)-(C)).  "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citing 20 C.F.R. § 416.202–03 (2005)).

commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.").[3]

## II.  Standard of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons.  [The court] must scrutinize the record as a whole to determine if the

---

[3] The record reflects that Tucker and her minor child reside in this judicial district.  Thus, venue is proper in this Court.  *See* 42 U.S.C. § 405(g) ("Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business…").

decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Moreover, "[t]here is no presumption…that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid. Instead, [the court] conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)) (internal citation omitted). In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

"Eligibility for…SSI requires that the claimant be disabled. 42 U.S.C. §…1382(a)(1)-(2)." *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. Feb. 11, 2015) (per curiam) (unpublished).[4]  "An individual under the age of 18 shall be considered disabled…if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 1382c(C)(i).  "Notwithstanding [§ 1382c(C)](i), no individual under the age of 18 who engages in substantial gainful activity…may be considered to be disabled." *Id.* § 1382c(C)(ii).

> The Social Security Administration uses a sequential, three-step analysis to determine whether a child is disabled. The claimant must establish (1) whether the child is working; (2) whether the child has a severe impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the Listing of Impairments. 20 C.F.R. § 416.924(a); *id.* Pt. 404, Subpt. P, App. 1…
>
> …To determine whether an impairment or combination of impairments "functionally equals" a listed impairment, the administrative law judge assesses the claimant on six domains, including (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. *Id.* §§ 416.926a(a), (b)(1), (d). The claimant must establish that he suffers from an "extreme" limitation in one of the domains, or "marked" limitations in two of the domains. *Id.* § 416.926a(a). A "marked" limitation is one that "interferes seriously

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014).  *See also Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants.").

5

with [the claimant's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). " 'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.*

*Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850-51 (11th Cir. 2015).[5] "The burden lies with the claimant to prove that he meets or equals a Listing." *Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 F. App'x 748, 750 (11th Cir. Dec. 8, 2011) (per curiam) (unpublished) (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)).

"When no new evidence is presented to the Appeals Council and it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner, but when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.   Claims on Judicial Review

**Claim 1 –**   The ALJ "erred by failing to find the claimant's Disruptive Behavior Disorder NOS,[6] and Adjustment Disorder with mixed disturbance of emotions and conduct were severe impairments and failed to explain how said impairments were analyzed when determining functional equivalence[.]"

**Claim 2 -**   "New and Material Evidence requires the case be remanded to the Commissioner for further evaluation pursuant to 42 U.S.C. 405g[.]"

---

[5] The Court will hereinafter use "Step One," "Step Two," and "Step Three" when referencing individual steps of this three-step sequential evaluation.

[6] "not otherwise specified"

6

(Doc. 15 at 1).

## IV. Analysis

### A. Claim 1

At Step One, the ALJ determined that D.T., a preschooler, had not engaged in work since the date of his SSI application. (R. 16). At Step Two, the ALJ summarily determined that D.T.'s only severe impairment was attention deficit disorder (ADD), finding this impairment was "established by the medical evidence" and "is 'sever' … because it causes significant limitation to the claimant's ability to perform basic work activities." (R. 16). At Step Three, the ALJ first summarily determined that D.T. did not suffer from an impairment or combination of impairments that met or medically equaled a relevant Listing of Impairments. (R. 16). The ALJ then proceeded with a "functional equivalence" analysis at Step Three, finding that D.T. had "marked limitation" only in the domain of "interacting and relating with others," "less than marked limitation" in the domain of "attending and completing tasks," and "no limitation" in the remaining four domains. (R. 16 – 24). Thus, the ALJ found that D.T. was "not disabled." (Doc. 24).

Tucker claims that the ALJ failed to properly consider D.T.'s diagnoses of disruptive behavior disorder, not otherwise specified ("DBD"), and adjustment disorder with mixed disturbance of emotions and conduct ("AD") both at Step Two and in the domain of "caring for oneself" in the "functional equivalence" portion of Step Three. (*See* Doc. 15 at 6 ("It is submitted that the ALJ erred by failing to find the child's Disruptive Behavior Disorder NOS, and Adjustment Disorder with mixed

7

disturbance of emotions and conduct severe impairments and that the ALJ did not explain her rationale for finding no limitation in the domain of Caring for Self.")). She also argues that the ALJ ignored other record evidence relevant to the self-care domain. (*See id.* ("The record indicates the child was exhibiting self-injurious behavior." (citing R. 192-193)).

### *1.   Step Two*

As to Tucker's claim of error at Step Two, even if the ALJ erred in not finding D.T.'s DBD and AD to be severe impairments, this error is harmless because the ALJ determined that D.T. had at least one severe impairment and noted, at Step Three, that she had "considered the claimant's impairments individually and in combination" (R. 16). The Eleventh Circuit Court of Appeals recently held as much regarding an ALJ's determination of an adult claimant's severe impairments, stating:

> If the ALJ determines at step two that there is no severe impairment, then the claimant is not disabled. [20 C.F.R.] § 416.920(c). Thus, the finding of any severe impairment, whether or not it results from a single severe impairment or a combination of impairments that together qualify as "severe," is enough to satisfy step two. *Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987). Where a claimant has alleged several impairments, the Commissioner must consider the impairments in combination and determine whether the combined impairments render the claimant disabled. *Jones v. Dep't of Health & Human Servs.,* 941 F.2d 1529, 1533 (11th Cir. 1991). An ALJ's statement that it has considered a combination of impairments is adequate to meet this standard. *Id.*
>
> Any error at step two was harmless because the ALJ found in Hearn's favor as to impairment, *Jamison,* 814 F.2d at 588, and the ALJ properly noted that he considered Hearn's impairments in the later steps, *Jones,* 941 F.2d at 1533. We affirm that the ALJ committed no error in considering Hearn's severe impairments or combination of

impairments.

*Hearn v. Comm'r, Soc. Sec. Admin.*, No. 14-15261, 2015 WL 4591811, at *2-3 (11th Cir. July 31, 2015) (per curiam) (unpublished). As with adults, a child claimant succeeds at Step Two so long as the child has at least one severe impairment. *See* 20 C.F.R. § 416.924(c). Thus, applying the reasoning in *Hearn*, any error the ALJ may have committed in not finding other severe impairments at Step Two, or at least failing to explain her rationale, is harmless.[7] Thus, Tucker is **DENIED** any relief in her claim of error at Step Two.

## 2. *Step Three*

The Court now turns to Tucker's claims of error in the ALJ's Step Three "functional equivalence" analysis in the domain of "caring for oneself."[8] In finding that D.T. had "no limitation" in the domain of self-care, the ALJ specifically found: "There is no evidence in the record indicating that the claimant has any limitations in this domain. Moreover, the claimant's mother has not alleged that the claimant has any limitation in this area." (R. 22). Tucker argues that "[i]t is unknown whether the ALJ evaluated the child's Disruptive Behavior Disorder NOS, and Adjustment Disorder and how it affected his ability to cope with stress." (Doc. 15 at

---

[7] Tucker acknowledges in her brief that the "finding of at least one severe impairment may be enough to satisfy the requirement of step two of the five-step process if the ALJ's decision clearly reflects consideration of all of a claimant's impairments." (Doc. 15 at 6 (citing *Jamison*, 814 F.2d at 588)). The Commissioner's brief notes this concession and argues harmless error as to Step Two. (*See* Doc. 16 at 7). Both briefs were filed in 2014, well before the *Hearn* decision was released.

[8] Tucker has argued no error in the ALJ's determination at Step Three that D.T. did not have an impairment or combination of impairments that "meets or medically equals" the relevant Listings, nor has she argued error in the ALJ's analysis of the other five domains of the functional equivalence test.

9

6).  The Commissioner's brief does not address Tucker's claim of error at Step Three.

In the domain of "caring for oneself," the Commissioner considers "how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area." 20 C.F.R. § 416.926a(k).

> This domain focuses on the child's "personal needs, health and safety." 20 C.F.R. § 416.926a(k)(1)(i). It requires that the child use age-appropriate strategies "to identify and regulate [her] feelings, thoughts, urges, and intentions," *id.* § 416.926a(k)(1)(iii), and to respond to "circumstances in safe and appropriate ways, making decisions that do not endanger [herself]," id. § 416.926a(k)(1)(iv).

*Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1177-78 (10th Cir. 2014).

No specific mention of AD is made anywhere in the ALJ's opinion, and Tucker cites only one page in the record where the disorder is mentioned (*see* Doc. 15 at 3 (citing "Tr. 203")) – page 6 of a 7-page psychiatric evaluation from Altapointe dated February 10, 2012, which lists Axis-I diagnoses of "adjustment disorder with mixed disturbance of emotions and conduct," "attentionn [sic] deficit hyperactivity disorder, combined type," "disruptive behavior disorder not otherwise specified," and "rule out posttraumatic stress disorder."  (R. 203 ("Exhibit No. 5F," page 28 of 29)).

In her general discussion of the record evidence proceeding her "functional equivalence" analysis, the ALJ noted:

> The record confirms that the claimant has been diagnosed with

10

> disruptive behavior disorder, not otherwise specified (Exh. 1F/1). The family therapy treatment notes at Altapointe Health Systems (Altapointe) consistently indicate that his mother reported the claimant had been expelled from several day cares, is aggressive – hitting, kicking, biting – and according to his mother this is true at home as well. On November 17, 2011, She stated "he is full of anger" (Exh. 1F/3). The therapy notes generally indicate that the claimant's appearance and grooming was appropriate, his behavior was normal and cooperative, although noted as hyperactive on some occasions, with normal mood and affect appropriate to the situation (Exh. 1F; 5F; 7F). The clinicians, noted that he had excellent vocabulary and syntax, but was reported to have difficulty falling asleep, settling down on one occasion, and 'fair' on another. The clinicians further observed the claimant had no impairment in his speech, no injurious behavior, no suicidal thoughts, no homicidal thoughts and his perceptions were within normal limits (Id.). The notes additionally indicate that his memory is unimpaired, his thoughts are logical and coherent, within normal limits, his concentration was not impaired, but he has poor insight and judgment, described as 'he is 4' on the November 17 visit (Exh. 1F/4)…

(R. 17 – 18).

When conducting the functional equivalence analysis, an ALJ must "consider [the child's] functional limitations resulting from all of [his or her] impairments, including their interactive and cumulative effects[,]" and "all the relevant information in [the child's] case record that helps []determine [the child's] functioning, including []signs, symptoms, and laboratory findings, [and]the descriptions … about [the child's] functioning from []parents, teachers, and other people who know [the child]…" 20 C.F.R. § 416.926a(e)(1)(i). Nevertheless, there " ' is no rigid requirement that the [administrative law judge] specifically refer to every piece of evidence in his decision, so long as' [a] Court can 'conclude [that] the [administrative law judge] considered [the claimant's] medical condition as a whole.' " *Parks ex rel. D.P.*, 783 F.3d at 852 (quoting *Mitchell v. Comm'r, Soc. Sec. Admin.*,

11

771 F.3d 780, 782 (11th Cir. 2014)). *See also Gray ex rel. Whymss v. Comm'r of Soc. Sec.,* 454 F. App'x 748, 750 (11th Cir. 2011) (per curiam) (unpublished) ("Although the ALJ must consider the Listings, there is no requirement that the ALJ mechanically recite the evidence leading to his ultimate determination. A finding that a claimant's impairments are not contained in the Listings may be implied from the ALJ's decision." (citing *Hutchison v. Bowen,* 787 F.2d 1461, 1463 (11th Cir. 1986)) (internal citation omitted)). Tucker has made no effort to explain what either AD or DBD is, or their significance to the domain of "caring for oneself" (except to conclusorily suggest that they may have "affected [D.T.'s] ability to cope with stress" (Doc. 15 at 6)). It is not apparent what the significance either disorder has to the domain, and, absent any substantive argument from Tucker, the Court cannot substitute its own judgment for that of the Commissioner in considering the significance *vel non* of these diagnoses to this domain. *Winschel*, 631 F.3d at 1178. Thus, the Court finds no reversible error at Step Three with regard to the ALJ's consideration of AD and DBD.

However, Tucker also argues that the ALJ's finding no limitation in the domain of self-care is in error because "[t]he record indicates the child was exhibiting self-injurious behavior." (Doc. 15 at 6 (citing R. 192-193)). In support, Tucker has cited a Direct Service Record ("DSR") regarding D.T. from Altapointe dated January 25, 2012, which indicates "Yes" to the presence of "self injurious behavior" and describes that behavior as " 'Plays with fire' putting objects in the space heaters." (R. 192). The DSR also notes that D.T. is "FASCINATED WITH

FIRE-puts things in the space heaters and in the stove if it is on." (R. 192).

Though conclusorily labeled as "self injurious behavior" in the DSR, the substantive descriptions of the behavior are more indicative of "ignor[ing] safety rules," which is noted as an example of limited functioning in self-care in the same provision as self-injurious behavior. 20 C.F.R. § 416.926a(k)(3)(iv) (examples of "limited functioning in caring for yourself" are "engag[ing] in self-injurious behavior (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take your medication), or []ignor[ing] safety rules"). *See also id.* § 416.926a(k)(1)(iv) ("Caring for yourself means … following safety rules" and "making decisions that do not endanger yourself"); *id.* § 416.926a(k)(2)(iii) (preschool children without impairment should "begin to understand how to control behaviors that are not good for you (e.g., crossing the street without an adult)").

The ALJ's opinion makes no mention of the record evidence of D.T.'s inappropriate behavior around fire. However, the ALJ's opinion does note other record evidence that indicates some form of limitation in the self-care domain. For instance, the ALJ noted that in 2011 Altapointe clinicians reported D.T.'s "difficulty falling asleep" (R. 18). *See* 20 C.F.R. § 416.926a(k)(3)(vi) (an example of "limited functioning in caring for yourself" is "disturbance in eating or sleeping patterns"). The ALJ also noted that, during one Altapointe visit in September 2012, Tucker indicated that D.T. would "run[] into traffic at times," and that an Altapointe doctor had recommended an increase in medication to target "dangerous impulsivity" (R. 18), other examples of D.T.'s ignoring safety rules. *See id.* § 416.926a(k)(3)(iv).

13

It is true that the examples of limiting functioning in self-care provided by § 416.926a(k)(3) "do not necessarily describe a 'marked' or 'extreme' limitation." 20 C.F.R. § 416.926a(k)(3). Moreover, with regard to D.T.'s noted difficulty falling asleep, the ALJ's opinion notes that this limitation appears to have improved over time. (*See* R. 18). However, given the evidence cited by Tucker, and the ALJ's own evidentiary findings as noted above, and given that the Commissioner has failed to address Tucker's claim of error at Step Three, the Court finds the Commissioner's determination that "[t]here is **no** evidence in the record indicating that the claimant has **any** limitations" (R. 23 (emphasis added)) in the domain of self-care is not supported by substantial evidence.[9] Thus, the Court **SUSTAINS** Tucker's claim of error that the ALJ failed to consider all relevant evidence when analyzing the domain of self-care and finds that **REMAND** under sentence four of § 405(g) is warranted so that the Commissioner can properly consider all the relevant record evidence with regard to this domain. *See Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996) ("[A] sentence-four remand is based upon a determination that the Commissioner erred in some respect in reaching the decision to deny benefits.").

### B.   Claim 2

Tucker has also argued that this Court should remand this case to the Commissioner under sentence six of § 405(g)(6) for the Commissioner to consider new evidence.

Sentence six of section 405(g) provides the sole means for a district

---

[9] Given that a finding of at least "marked limitation" in this domain would have supported a finding of disabled, the Commissioner's error in failing to consider relevant evidence as to this domain cannot be deemed harmless.

14

> court to remand to the Commissioner to consider new evidence presented for the first time in the district court:
>
> > The court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ....
>
> 42 U.S.C. § 405(g). "The sixth sentence of § 405(g) plainly describes an entirely different kind of remand [from the fourth sentence], appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Sullivan v. Finkelstein,* 496 U.S. 617, 626, 110 S. Ct. 2658, 2664, 110 L.Ed.2d 563 (1990); *see Melkonyan v. Sullivan,* 501 U.S. 89, 98, 111 S. Ct. 2157, 2163, 115 L. Ed. 2d 78 (1991) (The sixth sentence allows the taking of "new evidence ... that was not available to the claimant at the time of the administrative proceeding."). A remand to the Commissioner is proper under sentence six when new material evidence that was not incorporated into the administrative record for good cause comes to the attention of the district court. *See Milano v. Bowen,* 809 F.2d 763, 766–67 (11th Cir. 1987) (ordering a sentence six remand based on evidence first properly submitted to the district court); *Cherry v. Heckler,* 760 F.2d 1186, 1193–94 (11th Cir. 1985) (same); *Epps v. Harris,* 624 F.2d 1267, 1273 (5th Cir. 1980) (same); *Johnson v. Harris,* 612 F.2d 993, 998–99 (5th Cir. 1980) (same); *see also Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999) (new evidence will not be considered for the first time on appeal in this Court for the purposes of a sentence six remand).

*Ingram*, 496 F.3d at 1267.

The evidence Tucker presents is not "new." Tucker admits in her brief that the "new evidence" she presents consists of medical records "from August 12, 2013 through August 15, 2013." (Doc. 15 at 7). Thus, these records were plainly "in existence or available to" Tucker prior to the Appeals Council's denial of review on February 18, 2014. Tucker asks to be excused from not presenting this evidence because her counsel at the administrative level withdrew from representation after

the ALJ issued her unfavorable decision and Tucker was left to proceed *pro se* through the Appeals Council's denial of review. Only after the denial of review did Tucker obtain her present counsel, who "discovered there was evidence of an inpatient hospitalization that was not submitted to the Appeals Council." (Doc. 15 at 8). However, Tucker has not explained why she did not obtain new counsel until after the Appeals Council denied review (approximately seven months after the ALJ issued her unfavorable decision), nor has she cited any authority to support what essentially amounts to her request for a "do-over" after proceeding *pro se* with the Appeals Council did not produce a favorable result.

Moreover, it does not appear the evidence would have changed the outcome of the proceeding even if submitted to the Appeals Council. The SSA regulations provide that "[i]f new and material evidence is submitted, the Appeals Council must consider the additional evidence ***that relates to the period on or before the date of the ALJ's hearing decision***." *Hearn*, 2015 WL 4591811, at *1 (citing 20 C.F.R. § 416.1470(b)) (emphasis added). The medical records that Tucker presents as "new and material evidence" are from mid-August 2013 and therefore do not "relate to the period on or before the date of the ALJ's hearing decision" – July 23, 2013.

Because Tucker has not shown that a "sentence six" remand is appropriate, the Court will not order the Commissioner to consider this evidence on remand (though she is free to do so in her discretion). Thus, Tucker is **DENIED** any relief as to Claim 2.

## V.    Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's February 18, 2014 final decision denying D.T.'s application for SSI benefits is **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings not inconsistent with this decision.  The remand pursuant to sentence four of § 405(g) makes Tucker a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B), the Court hereby grants Wilson's attorney an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty days after receipt of a notice of award of benefits from the Social Security Administration.  *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at

1278 n.2.").

Final judgment shall issue separately in accordance with this Order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 5th day of August 2015.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**